No. 81.—FRANKLIN S. BLOOM, plaintiff in error, vs. THE STATE OF GEORGIA, defendant.

[1.] The Act of 1854, exempting the members of Protection Fire Company, No. 1, in the City of Macon, from Jury duty, not repealed by the Act of 1856, declaring who are qualified and liable to serve as Jurors in criminal cases.

In Bibb Superior Court.    Decided by Judge POWERS, May Term, 1856.

Franklin S. Bloom being summoned to serve as a Juror in a criminal case pending in the Court below, claimed that he was exempt from liability to do Jury duty. The case was submitted for adjudication to the Judge presiding, upon the following agreed state of facts :

1st. By Act of the General Assembly of Georgia, passed in 1854, a fire company of the City of Macon, designated as Protection Fire Company, No. 1, was chartered, by which divers privileges, immunities and exemptions were conferred upon the members of said company—among which is the following, to-wit : Each member of said company is exempted from serving as a Juror in the Co. of Bibb, so long as he continues to be a member of the same and shall discharge the duties of a fireman; and that the said Bloom is at this time, and has been since the organization of said company, a member thereof; and has been since that time, and now is, in the faithful discharge of all the duties of a fireman ; that said company being duly organized, accepted the charter, and that a list of the officers and members of said company has been returned to the Clerk of the Superior Court at the commencement of each term, as required by said charter.

2d. An Act passed in 1856, declares, that " all free white male citizens who have arrived at the age of twenty-one years, and not over sixty, and resident in the county where the trial is to be had, and not being idiots or lunatics, shall

be qualified and liable to serve as Jurors upon the trial of criminal cases."

3d. That the Act of 1856, so far as it amends or alters the charter of 1854, has not been accepted by said fire company.

It was contended by Counsel for Bloom—

1st. That the Act of 1856 did not repeal the Act of 1854, so as to make the members of said fire company liable to serve as Jurors.

2d. That if the Act of 1856 did take away the exemption granted by the Act of 1854, it was in conflict with that provision of the Federal Constitution, which declares that "no State shall pass any law impairing the obligation of contracts."

The Court below, upon the foregoing statement of facts, held that the Act of 1856 did take away the exemption claimed under the Act of 1854, and that the Act of 1856 is constitutional, for the reason, that the charter granted to the fire company is not such a contract as was contemplated by that clause of the Constitution referred to, but is a privilege conferred in consideration of a public service to be rendered, and subject at any time to be revoked. The Court further held, that the Act of 1854, so far as it exempted the members of said company from Jury duty in criminal cases, is itself unconstitutional, because it is unjust to the balance of the citizens of the County of Bibb, and because it is contrary to the Constitution of this State, which declares, that " trial by .Jury, as heretofore used in this State, shall remain inviolate," the Court being of the opinion that as each citizen charged with an offence against the laws is entitled to be tried by his peers, the Legislature has no right to exempt any citizen from being summoned as a Juror in his case.

Counsel for Bloom excepted to the several rulings of the Court, and now assign the same as error.

E. A. & J. A. NISBET, for plaintiff in error.

T. W. MONTFORT, Sol. General, for the State.

Bloom *vs*. The State.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was the Act of February, 1854, exempting fire Company, No. 1, in the City of Macon, from Jury duty, so long as they remained members thereof constitutional ?

We scarcely deem it worth the time to discuss this branch of the case.   While it may not be within the pale of the constitutional competency of the Legislature to be partial in the imposition of burdens, the converse of this does not follow. It has been the uniform course of the General Assembly, ever since the organization of the State Government, to bestow its favors where it listed.   It grants relief to one bondsman and refuses it to another ; it pardons and it refuses to pardon, as seemeth to it good ; it allows one man to peddle in certain counties without a license, and refuses it to others.   The Digest is full of this species of partial legislation.

Ferry and bridge franchises have been granted to certain individuals time immemorially.   Certain persons have been relieved from the disability of not marrying again, being the offending party in divorce cases, while others still labor under the penalty.   But I need not enumerate.   Establish the principle that all this class of legislation is void, because in derogation of common right, and you will, to a very considerable extent, eviscerate the Statute Book.

And whether it be obnoxious to the further objection of impugning the State Constitution, which declares, that trial by Jury as heretofore practised, shall remain inviolate, it will be time enough to discuss when the exigency may arise ; that is, when it shall be made to appear that the criminal justice of the country has failed by reason of these exemptions.   The record before us presents no such case.

Does the Act of 1856, declaring who are qualified and liable to serve as Jurors in criminal cases, repeal the Exemption Act of 1854, which we have just been considering ?

The first section declares, that " all free white male citizens who have arrived at the age of twenty-one years, and

residents of the county where the trial is to be had, and not being idiots or lunatics, shall be qualified and liable to serve as Jurors upon the trial of all criminal cases." (*Pamphlet Acts, p.* 229.)

This language is exceedingly broad; and from the fact that the Legislature saw fit to except idiots and lunatics, who were excluded by the general law, it would seem that they certainly intended to include every body else. It is conceded that the words of the Act are sufficiently comprehensive to include members of the Macon Fire Company No. 1. It is proposed to take them out, however, upon a familiar rule in the construction of Statutes, namely : that a subsequent affirmative Statute does not repeal a previous special exemption. And the case of *King vs. Pugh,* (*Douglass' R.* 189,) decided in 1779, is the strongest authority relied on in support of that principle. It was there held, that if the inhabitants of a hundred had enjoyed the immemorial privilege from serving on the Jury, they are not liable to be summoned under any of the different Statutes relative to Juries; and the Statutes of 4 *and* 5 *W. & M.;* 7 *and* 8 *W. and* 3 *and* 4 *Ann,* are cited.

We have not the British Statutes at large before us; but against the privilege here set up, the authority of Lord *Coke* was cited, who expressly says in his Commentaries upon the Statute of 22 *Henry* 8, relative to bridges and highways, that the words in the 4th section of that Statute, having given authority to tax *every inhabitant,* all privileges of exemptions or discharges whatsoever, for contribution for the reparation of decayed bridges, are taken away, although the exemption were by Act of Parliament. (2 *Inst.* 704.) And Counsel on the other side of that case, admitted that the words of this Statute were much broader and more comprehensive than those of the Acts relative to Juries.

But the Act of 22 *Henry* 8, relative to highways and bridges, is not broader nor more comprehensive than the words of the Act of 1856 relative to Jurors. So that, were

we left to stand upon this doctrine alone, we might be troubled on account of the universality of the language.

There are other considerations which might be suggested why the Legislature did not intend, notwithstanding the broad terms used in the late law, to repeal all pre-existing exemptions.   As early as 1809 Ministers of the Gospel and Justices of the Inferior Court were relieved, at their own option, from serving on Juries.   No complaint has been made against this Act, although it has stood on the Statute Book for nearly fifty years.   It might be fair to infer that the Legislature did not intend to revoke these privileges.

The exemption granted to volunteer and fire companies began at an early period, and has been constantly practised.   It is hardly to be presumed that a species of Legislation so long and perseveringly pursued, would have been swept away by a side blow, and that, too, without creating any sensation.

From these and other considerations, plausible inferences might be deduced against the alleged repeal.   And yet, all this would not entirely remove the doubt occasioned by the universality of the words of the late law.   We are greatly gratified, therefore, at being able to settle, without cavil, that it was not the intention of the Legislature to recall, by the recent Act, the previous discharges which had been granted.

By an examination of the Statutes of 1855–'56, it will be found that the instances are broad-cast everywhere in the pamphlet of the like exemptions having been granted by the very Legislature which are supposed to have repealed, by implication, that granted to the Macon Fire Company No. 1.

The general Jury Act was approved February 28, 1856. It will be found that these Exempting Acts begin the 16th of February, and run on to the 6th of March, before and after the Jury law was passed.   One of them bears date the 27th of February, the day before.   To hold, therefore, that the Legislature intended to repeal all these previous exemptions to fire, volunteer and other companies, while they were granting them at the same time to new associations in one

instance, to a whole brigade of volunteers in Augusta, is to stultify that body.

But that is not all. As if to remove the last lingering remains of infidelity itself, on the 6th of March, 1856, the Macon Hook and Ladder Company were incorporated " with the same rights, privileges and exemptions as are extended to Protection Fire Company, No. 1, in that city." Here, then, is an express declaration by the authors of the general Jury Law, made eight days after it is said to have repealed, by implication, the exemption from Jury duty, granted in 1854 to Protection Fire Company, No. 1, declaring this exemption still exists, and is of full force and effect. And Mr. Bloom, the plaintiff in error, being a member of that company, the argument is exhausted and the demonstration complete.

Upon what class of persons, then, it may be asked, does the Act of 1856 operate? By the law of 1799, regulating the liability and qualifications of Jurors in criminal cases, it is enacted, that in addition to their being between the ages of 21 and 60, they must possess the qualifications of voters for the most numerous branch of the Legislature, viz: have been citizens of the county for six months, and paid all taxes required of them for the previous year. This is omitted by the Act of 1856, and persons are qualified to serve on Juries whether they have paid taxes or not, provided they are residents of the county at the time when the cause is tried. It was principally intended, we have no doubt, to dispense with the six month's previous citizenship that the first section of this Act was changed, the Legislature wisely concluding that the shorter the residence of the Juror, the greater the probability that his mind would be free from bias or prejudice. It is a salutary change.

As to the constitutionality of the Act of 1856, it becomes unnecessary to express any opinion upon that point. We have considered it, however, and notwithstanding the able and *impassioned* argument of our brother Nisbet, we are clear that the charters granted to these fire companies and the exemptions to the members thereof, are not *contracts*, within

the purview of the Constitution of the United States; and that not only may these exemptions be revoked by the Legislature, leaving the member to perform his duty or not as he may see fit, but the charters themselves may be abolished.

We learn from the history of corporations, that a destructive fire having occurred in Nicomedia, Pliny was induced to recommend to the Emperor Trajan, the institution for that city of a fire company of 150 men, (*Collegium Fabrorum,*) with an assurance that none but those of that business should be admitted into it; and that the privileges granted them should not be extended to any other purpose. But the Emperor, we are told, refused the grant, and observed that societies of that sort had greatly disturbed the peace of the cities, and that they would not fail to be mischievous. (2 *Kent*, 268.)

No such objection exists here to modern fire companies; but if it be true, that by reason of these exemptions, already more than five hundred of the best men of the county are withdrawn from Jury duty, it well becomes the Legislature to pause at least, if not to retrace their steps.